

Villanova University School of Law
Villanova University School of Law Digital Repository

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# Augustin v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 06-4744

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Augustin v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1344.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1344

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4744

LUCKSON AUGUSTIN,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A44-595-689)
Immigration Judge:  Hon. Henry S. Dogin

Argued January 31, 2008

BEFORE: RENDELL and CHAGARES, *Circuit Judges*,
and POLLAK,[*] *District Judge*

---

[*]  Honorable Louis H. Pollak, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

(Filed: March 20, 2008)

Engy Abdelkader (Argued)
Legal Services of New Jersey
100 Metroplex Drive, Suite 402
Edison, NJ 08818
    *Counsel for Petitioner*

Peter D. Keisler
Douglas E. Ginsburg
John D. Williams (Argued)
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
    *Counsel for Respondent*

---

## OPINION OF THE COURT

---

POLLAK, *District Judge.*

Luckson Augustin petitions for review of an order of the Board of Immigration Appeals ("BIA") concluding that he is removable and ineligible for cancellation of removal. We are called upon to decide whether the BIA erred in refusing to impute to petitioner his father's years of continuous residence in order to meet the seven-year requirement for cancellation of removal.

## I.

Petitioner Luckson Augustin, born on August 24, 1981, is a native and citizen of Haiti. He was admitted to the United States as a lawful permanent resident ("LPR") on February 24, 1995, at the age of thirteen.

The Department of Homeland Security ("DHS") commenced removal proceedings against petitioner with a notice to appear dated November 7, 2005, charging him as removable for having been convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The notice alleged that petitioner had been convicted of eluding police in New Jersey and had been sentenced to three years imprisonment on August 19, 2005.

On March 30, 2006, DHS filed an I-261 form withdrawing the aggravated felony charge and replacing it with charges that petitioner was removable on two other grounds: that he had been convicted of two crimes involving moral turpitude, and that he had been convicted of unlawful possession of a firearm. *See* 8 U.S.C. §§ 227(a)(2)(A)(ii), (a)(2)(C). In support, DHS made additional allegations that petitioner had been convicted in New Jersey Superior Court on December 10, 2001, of receiving stolen property and, on December 23, 2003, of unlawful possession of a handgun.[1]

---

[1] The I-261 indicates that, although DHS withdrew the charge that petitioner had been convicted of an aggravated felony, DHS did not withdraw the allegations supporting that charge.

3

At a hearing before an immigration judge ("IJ") on April 13, 2006, petitioner, represented by counsel, admitted the government's allegations.

As evidence of petitioner's convictions, the government initially submitted the judgments of conviction for the weapon and eluding police charges, but submitted only the criminal complaint for the receiving stolen property charge. Upon the IJ's objection that he needed the judgment of conviction for the receiving stolen property charge, the government submitted in addition petitioner's New Jersey rap sheet listing all of his New Jersey convictions. The rap sheet indicates that petitioner was arrested for receiving stolen property on March 25, 2000, found guilty on December 10, 2001, sentenced on March 26, 2002, and resentenced on April 25, 2003.

At a hearing on May 11, 2006, the IJ, at petitioner's urging, granted petitioner's counsel's motion to withdraw from the case. Petitioner then argued that he was eligible for cancellation of removal despite having committed a crime of moral turpitude in 2000, because he did not become removable until being convicted of the gun charge in 2003 or his second crime involving moral turpitude in 2005 — more than seven years after his admission as an LPR. *Cf.* 8 U.S.C. § 1229b(a)(2) (providing that an LPR is eligible for cancellation of removal only after seven years of continuous residence and five years as an LPR). The government responded that the commission of a single crime involving moral turpitude "stops the clock" accruing time toward the continuous residency requirement, regardless of the existence of a second crime involving moral turpitude rendering the alien removable. *See* 8 U.S.C.

4

§ 1229b(d)(1).  The IJ pretermitted petitioner's application for cancellation of removal.

At a subsequent hearing on petitioner's application for relief under the Convention Against Torture ("CAT") on June 16, 2006, the IJ heard petitioner's testimony regarding his fear of returning to Haiti and received country reports in support of petitioner's application for CAT relief.  Petitioner testified that both of his parents were U.S. citizens, his mother having moved to the United States in 1982 and his father in 1989.  He testified that his father, prior to obtaining citizenship, had been an LPR starting in 1989.  He further testified that his parents sponsored him for LPR status, and that he obtained LPR status upon his admission to the United States on February 24, 1995.  In an oral decision, the IJ found petitioner's testimony credible, but denied his CAT claim.

On appeal to the BIA, petitioner, represented by counsel, raised various arguments, including those he raises again on appeal: (1) that the IJ erred in finding him ineligible for cancellation of removal because a minor alien can count his parents' years as an LPR toward the statute's seven-year residency requirement,[2] and (2) that petitioner's conviction for receiving stolen property (which cut off his accrual of time toward the seven-year requirement) does not qualify as a "conviction" for the purpose of removal because petitioner was sentenced under a pre-trial diversion program.  On October 13, 2006, the BIA affirmed the IJ in a four-page opinion.

_____

[2] Noting that petitioner had not raised this argument before the IJ, the BIA elected to consider it for the first time on appeal.

5

## II.

We have jurisdiction over the legal question raised by petitioner regarding his eligibility for cancellation of removal pursuant to Congress's grant of jurisdiction in 8 U.S.C. § 1252(a).

We do not, however, have jurisdiction to consider whether the BIA erred in finding petitioner removable on the basis of his conviction for receiving stolen property, because the question is moot. The IJ held and BIA affirmed that petitioner was also removable as charged with having been convicted of a firearm offense. Because petitioner does not challenge that ground of removal, his order of removal will stand without regard to whether the stolen property conviction properly qualifies as a ground of removal.[3]

We review legal questions *de novo*, but "defer to the BIA's reasonable interpretations of statutes it is charged with administering." *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 63 (3d Cir. 2007) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

---

[3] Although the government has not raised this jurisdictional issue, we of course have a duty to inquire into the basis for our own jurisdiction. *See Adapt of Philadelphia v. Philadelphia Hous. Auth.*, 433 F.3d 353, 361 n.10 (3d Cir. 2006).

## III.

The question before the court is whether the BIA erred in refusing to impute to an alien who entered the United States as a minor the alien's parent's years of continuous residence in order to meet the seven-year requirement for cancellation of removal.

The Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub L. No.104-208, Div. C, 110 Stat. 3009-546, provides that, for permanent residents, "[t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien":

> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b(a). Under the INA, "'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13). The INA defines "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." *Id*. § 1101(a)(33). The statute

7

further provides that an alien's period of continuous residence for the purpose of meeting the residency requirement ends upon the issuance of a notice to appear or upon the commission of a crime that would render the alien inadmissible. *Id*. § 1229b(d)(1).

The BIA's interpretation of the INA in an opinion dismissing an alien's appeal is entitled to *Chevron* deference. *See Sun Wen Chen v. Att'y Gen.*, 491 F.3d 100, 106 (3d Cir. 2007). Under *Chevron*, in reviewing an agency's construction of a statute administered by the agency, the court "ask[s] first 'if the statute is silent or ambiguous with respect to the specific issue' of law in the case," using "'traditional tools of statutory construction' to determine whether 'Congress had an intention on the precise question at issue.'" *Id.* (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 & n.9 (1984)). If Congress's intention is not evident, the court "move[s] to the second step, where 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.' When Congress has left a gap in a statute, implicitly leaving the administering agency responsible for filling that gap, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'" *Id.* (quoting *Chevron*, 467 U.S. at 834-44 & n.9).

According to petitioner's testimony, which was uncontradicted and which the IJ accepted, petitioner was admitted to the United States as an LPR in 1995, at the age of thirteen. In immigrating to the United States, he joined his parents; his father had obtained LPR status in 1989, and both his

8

parents were eventually naturalized as U.S. citizens. Petitioner's commission of a crime involving moral turpitude in 2000 cut off his accrual of years of continuous residence for the purpose of becoming eligible for cancellation of removal. Petitioner contends that, because he was a minor when he was first admitted to the United States in 1995, his father's preceding years of continuous residence, commencing in 1989, should be imputed to him for the purpose of meeting the seven-year requirement.

The BIA held that petitioner was not eligible for cancellation of removal because, under the INA's definitions of "residence" and "admitted," petitioner had not resided in the country for the requisite seven years following admission. The BIA declined to impute petitioner's father's years of residence to petitioner because doing so did not accord with "the clear statutory dictates of the residency requirements for cancellation." In so holding, the BIA rejected the reasoning of *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013 (9th Cir. 2005), in which a divided panel of the Ninth Circuit held that, under the cancellation provision, a parent's preceding years of residence in the United States are imputed to a minor child for the purpose of meeting the seven-year residency requirement. The Ninth Circuit held that the BIA's disallowing such imputation was unreasonable because it was inconsistent with the facts that "our immigration statutes and regulations are replete with provisions giving a high priority to the relation between permanent resident parents and their children" and that "a parent's status, intent, or state of mind is imputed to the parent's unemancipated minor child in many areas of immigration law, including asylum, grounds of inadmissibility, and legal residency status." *Id*. at

9

1024 (internal quotation marks omitted).[4]   Judge Fernandez dissented, finding that the cancellation of removal provision "could not be more clear" in requiring seven years of actual residence, and that, "[e]ven if one could argue that the statute is ambiguous, the BIA's interpretation is quite reasonable, and to that we must defer."  *Id*. at 1032.

Since dismissing petitioner's appeal in the instant case, the BIA has again repudiated the holding in *Cuevas-Gaspar*.  In *In re Escobar*, 24 I. & N. Dec. 231 (BIA 2007), the petitioner had arrived as a young child with her mother in the early 1980s and was admitted to LPR status in 2003; her mother became an LPR earlier, in 1992.  *See id*. at 231.  At the time of her removal proceedings in 2006, Escobar had not accrued the five years of LPR status required for cancellation of removal.  *See* 8 U.S.C. § 1229b(a)(1).  Despite the fact that the case arose in the Ninth Circuit, where *Cuevas-Gaspar* requires the BIA to impute a

---

[4] The *Cuevas-Gaspar* court also considered whether IIRIRA's legislative history supported the BIA's interpretation.  Finding no explanation in the legislative history for IIRIRA's introduction of the seven-year "residence" requirement, the court speculated that Congress intended to resolve a conflict between the BIA and the courts of appeals over whether the seven years of "domicile" required under the former INA § 212(c) repealed by IIRIRA had to follow attainment of LPR status, or whether it was sufficient simply to have attained LPR status at some point; the cancellation of removal provision resolves this question by expressly requiring five years of LPR status and seven years of continuous residence. *Cuevas-Gaspar*, 430 F.3d at 1027-28.

10

minor alien's parent's years of residence to the minor alien for the purpose of meeting the residency requirement for cancellation of removal, the BIA refused to impute Escobar's mother's years of LPR status to Escobar in order to meet the five-year LPR status requirement: "[I]mputing a parent's status and residence to allow a child to meet the requirements of both sections 240A(1) and (2) of the Act would essentially destroy the distinct tests mandated by Congress when it amended the statute to replace the former section 212(c) waiver with cancellation of removal." 24 I. & N. Dec. at 234-35; *see also id.* at 235 (stating that the BIA would not follow *Cuevas-Gaspar* outside the Ninth Circuit).

The INA as amended by IIRIRA does not expressly address the question whether parents' years of residence may be imputed to their minor children for the purpose of meeting the seven-year requirement for cancellation of removal. The cancellation of removal provision neither provides for such imputation nor disallows it. Furthermore, we have been unable to find in IIRIRA's legislative history any indication of Congress's intention regarding imputation — which, prior to IIRIRA's enactment, some courts had read into the former INA § 212(c), a relief provision repealed by IIRIRA.[5] *See Cuevas-*

---

[5] As we discuss further below, imputation under the former INA § 212(c) hinged on the ambiguous term "domicile" in that provision, a term replaced by "residence" in the current cancellation of removal provision. The government has not contended before us that Congress in IIRIRA eliminated the word "domicile" in favor of "residence" in order to eliminate imputation, and IIRIRA's legislative history does not provide

11

*Gaspar*, 430 F.3d at 1022-24 & n.7 (describing pre-IIRIRA cases). In short, in *Chevron* terms, "the statute is silent . . . with respect to the specific issue." *Chevron*, 467 U.S. at 843.

Accordingly, we move to *Chevron*'s second step, where we must affirm the BIA's interpretation as permissible. The BIA declined to impute petitioner's father's years of residence to petitioner because doing so would violate the statute's clear requirements for cancellation of removal. The statute requires seven years of continuous "residence," and "residence" is defined as a person's "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). It is undisputed that petitioner did not "actual[ly] dwell[]" in the United States for seven continuous years before he committed the crime involving moral turpitude that cut off his period of continuous residence. The BIA's denial of cancellation of removal on this ground — and its refusal to impute to petitioner his father's years of residence — is permissible because it is a straightforward application of the statute's requirements. We cannot find the BIA unreasonable for failing to read into the statute an exception seemingly at odds with the statute's requirements.

We are not convinced by petitioner's contentions, echoing the Ninth Circuit's opinion in *Cuevas-Gaspar*, that the BIA's interpretation is unreasonable because it conflicts with (1) the high priority the INA otherwise places on relations between LPR parents and their minor children; (2) the BIA's prior

support for such an inference. Accordingly, we decline to speculate along those lines.

12

interpretation of the immigration laws and regulations as allowing for imputation of parents' statuses to their minor children; and (3) the provision's purpose of providing relief for aliens who have developed close ties to the United States. Nor are we persuaded to grant the petition on the strength of our reasoning in *Morel v. INS*, 90 F.3d 833 (3d Cir. 1996), *vacated on other grounds*, 144 F.3d 248 (3d Cir. 1998), where we addressed imputation under the former INA § 212(c).

First, although we agree that the BIA's interpretation does not further the goal of maintaining the relationships between LPR parents and their minor children, and although the legislative history of IIRIRA does reflect Congress's continuing acknowledgment of that general goal,[6] we cannot on the basis of that general policy goal alone find unreasonable the BIA's unwillingness to read into the statute an exception to the requirements for cancellation of removal for minors whose LPR parents preceded them in immigrating to the United States. The requirements for cancellation of removal are clear. Congress could have provided that LPR parents' years of residence would be imputed to their minor children. But Congress has not done so.

With regard to the second argument, that "the BIA's refusal to impute a parent's permanent resident status here conflicts with the BIA's consistent willingness to impute a

---

[6] *See, e.g.*, H. Rep. 104-469, Part I, at 108 (1996) (House Judiciary Committee report deeming a high priority uniting "nuclear" families of spouses and minor children, possibly at the expense of letting in fewer adult "extended family" members).

parent's intent, state of mind, and status to a child," *Cuevas-Gaspar*, 430 F.3d at 1026, we cannot agree with the Ninth Circuit that the BIA's interpretation of the cancellation provision unreasonably conflicts with the BIA's prior decisions on imputation. The three cases cited by the Ninth Circuit, *see id.*, form a line of cases concerning a single fact pattern: Where a child leaves the country and his or her parent has abandoned permanent residence in the United States, the parent's intention to abandon residence in the United States is imputed to the child. *See Matter of Huang*, 19 I. & N. Dec. 749, 750 n.1 (BIA 1988) (following *Matter of Winkens*, 15 I. & N. Dec. 451, 452 (BIA 1975) ("[The parents'] abandonment of their lawful permanent resident status is imputed to the respondent, who was subject to their custody and control. He had gained lawful permanent resident status through them, and he lost it when they abandoned their residence and took him with them.")); *Matter of Zamora*, 17 I. & N. Dec. 395, 396 (BIA 1980) ("We hold that this voluntary and intended abandonment by the mother is imputed to the applicant, who was an unemancipated minor at the time he was sent back to Mexico by his mother, and at the time his mother abandoned her lawful resident status."). These cases are not in direct conflict with the BIA's interpretation of the cancellation statute because the determination in these cases turned in part on the minor alien's intention: Part of the test for whether an alien has abandoned his status as an LPR is whether he intended to return to the United States during his sojourn abroad. *See Chavez-Ramirez v. INS*, 792 F.2d 932, 937 (9th Cir. 1986). Accordingly, a parent's intention to stay abroad or return to the United States was imputed to the minor child because the child was presumed to be under his parents' control and unable to form a meaningful intention. By contrast, determining where

14

a minor "resides" within the meaning of the INA — a determination made "without regard to intent," 8 U.S.C. § 1101(a)(33) — presents no such question regarding a minor's intention.

Third, we cannot find the BIA's interpretation unreasonable for conflicting with the ameliorative purpose of cancellation of removal. Although the BIA's ruling does deny relief to certain aliens, that alone cannot render the BIA's interpretation unreasonable. Congress restricted relief to those aliens who had accrued seven years of continuous residence in addition to five years of LPR status. The BIA's refusal to create an exception simply heeds the statute's plain requirements.

Finally, we find the line of cases addressing imputation under the former INA § 212(c) inapposite to the question before us. Before IIRIRA's enactment, the INA provided that the Attorney General had discretion to waive deportation for permanent residents who had "a lawful unrelinquished domicile of seven consecutive years" in the United States. INA § 212(c), 8 U.S.C. § 1182(c) (1995) (repealed 1996).[7] The term "domicile" was not defined in the INA. The Second and Ninth Circuits — and this Court, in a decision thereafter vacated — ruled that "domicile" should be defined in accordance with the common law, under which a child's domicile is thought to

---

[7] Although § 212(c) was, by its terms, only applicable in exclusion proceedings for inadmissible aliens, it was eventually construed to create discretionary relief in deportation proceedings as well. *See INS v. St. Cyr*, 533 U.S. 289, 295 (2001).

15

follow that of the child's parents because a "domiciliary" is defined by the intention to return to the domicile during any absence therefrom, and children are presumed incapable of forming such an intention. Therefore, it was held, a minor alien's years of domicile in the United States began when his parents established their domicile here, despite the fact that the minor alien did not arrive until later. *See Morel*, 90 F.3d at 841; *Lepe-Guitron v. INS*, 16 F.3d 1021, 1025 (9th Cir. 1994); *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("Since most minors are incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents.")).

Unlike the former § 212(c), the current cancellation of removal provision does not contain the term "domicile," which was the statutory basis for imputing a minor alien's parents' years in the United States to the minor alien in accordance with the common law. To the contrary, the current cancellation provision contains the word "residence," defined as an alien's "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). Under the former § 212(c), petitioners benefitted from the canon of statutory interpretation that "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word" — including, in the case of "domicile," that a child's domicile would follow that of his parents. *See Valansi v. Ashcroft*, 287 F.3d 203, 218 (3d Cir. 2002) (quoting *Morrissette v. United States*, 342 U.S. 246, 263 (1952)). However, the cancellation of removal provision

16

contains no such undefined term, and we cannot find unreasonable the BIA's straightforward application of the cancellation of removal provision's requirements.

## IV.

For the reasons given above, we do not find the BIA's interpretation of the cancellation of removal provision unreasonable. We will therefore DENY the petition for review.