

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2008

# Kiselev v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2773

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Kiselev v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1029.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1029

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2773

MARINA KISELEV; VICTOR KISELEV; ROMAN KISELEV,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A98-580-533; A98-580-534; A98-580-536)
Immigration Judge:  Honorable R.K. Malloy

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 2008

Before: FUENTES, ALDISERT and GARTH, Circuit Judges

(Opinion filed: June 12, 2008)

OPINION

PER CURIAM

        Marina, Victor, and Roman Kiselev petition for review of a final order of removal

issued by the Board of Immigration Appeals ("BIA").  For the reasons that follow, we

will deny the petition.

I.

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented here for review. To summarize briefly, petitioners are, save for the youngest Roman who is both a native and citizen of Israel, a family of Ukrainian natives and citizens of Israel. Petitioners entered the United States legally, and after overstaying their visitor visas, were placed in removal proceedings in November 2004. Marina Kiselev ("Kiselev"), the lead respondent below, applied for relief from removal in an asylum application, and accompanying affidavit, filed on September 17, 2004.[1] In her application, Kiselev alleged that she was persecuted in the Ukraine (formerly Russia) because of her Jewish heritage. The application alleged no instances of persecution involving the remaining Kiselev family members.

On November 5, 2004, Kiselev attended an asylum office interview and confirmed her account of persecution in the Ukraine. At a master calendar hearing on June 7, 2005, the Kiselevs conceded that they were removable as charged under INA § 237(a)(1)(B). Kiselev filed another Form I-589 and accompanying affidavit at this time. In this second claim for asylum, Kiselev claimed that instead of being persecuted in Russia, the family was actually persecuted in Israel where they had lived prior to coming the United States. Asked to explain the disparity between her two applications, Kiselev described an

---

[1] Marina listed her husband, Victor, and sons, Igor and Roman, as derivatives on her application. See 8 C.F.R. § 208.3(a). "While our opinion refers to the primary applicant, it is understood to include the derivative applicant as well." Al-Fara v. Gonzales, 404 F.3d 733, 736 n.1 (3d Cir. 2005)

encounter with an attorney named "David" who led her to believe that if she mentioned her experience in Israel she would not be granted asylum in the United States. Kiselev alleged that "David" instructed her to lie in this regard and, for this reason, Kiselev also conceded not being truthful during her asylum office interview.

After a hearing at which Marina and Igor Kiselev testified,[2] the Immigration Judge ("IJ") denied the various applications for relief and ordered the Kiselevs removed to Israel. In her oral decision, the IJ noted that Marina Kiselev's story concerning "David" was credible and took judicial notice that such an attorney had been providing similar advice to former residents of Eastern Europe and Russia in particular. The IJ determined, however, that the remainder of Marina Kiselev's testimony was not credible. The IJ also found, in the alternative, that even if Kiselev were credible she had not established past persecution or a well-founded fear of persecution in Israel. Kiselev filed a timely appeal to the BIA. The BIA affirmed the IJ's decision and dismissed the appeal. The BIA noted the inconsistencies in matters such as the nature, circumstances, and severity of the harm the Kiselevs endured in Israel put forth in Kiselev's testimony. In affirming the IJ's credibility determination, however, the BIA did not affirm the IJ's alternative holding that, even if Kiselev were credible, she did not establish eligibility for asylum. Kiselev timely filed a petition for review.

II.

_____

[2] Igor Kiselev, Marina's 21-year old son, was part of the proceedings before the IJ, but is not a party to this petition for review.

-3-

The BIA had jurisdiction over Kiselev's appeal under 8 C.F.R. § 1003.1(b)(3). This court has jurisdiction to review a final order of removal under 8 U.S.C. § 1252. Findings of fact are reviewed for substantial evidence and, therefore, may not be set aside unless a reasonable fact-finder would be compelled to find to the contrary. Gabuniya v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006). The BIA's interpretation of the Immigration and Nationality Act in an opinion dismissing an alien's appeal is entitled to deference. See Augustin v. Attorney General of the U.S., 520 F.3d 264, 268 (3d Cir. 2008). We will not reverse the BIA as long as "a reasonable fact finder could make a particular finding on the administrative record." See Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003). In cases involving an adverse credibility determination, we must deny the petition for review as long as that determination is "supported by such relevant evidence as a reasonable mind would find adequate." Id. at 250. In addition, we review the IJ's decision to the extent that the BIA adopted it. See Miah v. Ashcroft, 346 F.3d 434, 439 (3d Cir. 2003).

III.

When evaluating an adverse credibility determination, we must "ensure that it was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence on country conditions." Dia, 353 F.3d at 249 (quotation and citation omitted). "Generally, minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." Gao v. Ashcroft, 299 F.3d

-4-

266, 272 (3d Cir. 2002) (quotation and citation omitted). Further, "deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." Balasubramanrim v. INS, 143 F.3d 157, 162 (3d Cir. 1998) (citation omitted). Findings of adverse credibility "must be based on inconsistencies and improbabilities that go to the heart of the asylum claim."[3] Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quotation and citations omitted).

The IJ and BIA properly based their adverse credibility determination upon marked inconsistencies and flaws in—and between—Kiselev's two persecution accounts and her subsequent testimony. As the IJ noted, Kiselev provided strikingly different reasons for requesting asylum at various points in the administrative process. The first of these claims was based upon persecution suffered in the Ukraine because Kiselev was Jewish. The second claim was based upon persecution suffered by the Kiselev family in Israel because the Kiselevs were Russian and not considered to be Jewish by Israelis. As the IJ noted, Kiselev's encounter with "David," and his poor advice, explained what had happened with Kiselev's first claim to some degree. But even if such an argument were sufficient to provide some amount of restoration to Kiselev's credibility, Kiselev did not

---

[3] The provisions of the Real ID Act of 2005 that address the court's review of an adverse credibility finding do not apply in this case because Kiselev applied for relief before the Act's effective date. See Chukwu v. Att'y Gen.of the United States, 484 F.3d 185, 189 (3d Cir. 2007).

simply transpose events occurring in Israel with the events she described in Ukraine.[4]

Further, there were also inconsistencies between information contained in Kiselev's second, and purportedly truthful, affidavit and her subsequent testimony before the IJ. In Zubeda v. Ashcroft, 333 F.3d 463, 476-77 (3d Cir. 2003), we observed that an IJ should be careful before placing too much weight on a discrepancy between an asylum application and subsequent testimony. See also Fiadjoe, 411 F.3d at 159. Given the history of the proceedings here, however, such inconsistencies alone were more than a sufficient basis to support the adverse credibility finding as they plainly went to the heart of Kiselev's claim.

Moreover, as detailed by the IJ, Kiselev was selected by a 2006 Diversity Program Lottery (DV-2006), which allowed for a path to legalization, but to apply she and her family would have had to return to Israel. Kiselev stated in testimony before the IJ that she was afraid to return to Israel to complete this application. Importantly, however, Kiselev traveled to Israel from the United States during the time when she allegedly was being persecuted. As the IJ noted, while her mother was ill, Kiselev returned to Israel, with her son Roman, in March 2003 and re-entered the United States in November 2003. The IJ properly found the discrepancy in these accounts troubling as these facts diminished Kiselev's believability. The contradiction in Kiselev's testimony in this

---

[4] We note too that Kiselev baldly admitted to not being truthful at her asylum office interview.

regard is further relevant, as any voluntary return weakens her assertion that she fears persecution. In sum, the inconsistencies, contradictions, and omissions, involving facts central to Kiselev's claims, constitute substantial evidence supporting the adverse credibility finding of the IJ and BIA; a reasonable fact-finder would not be compelled to conclude to the contrary.[5]

## IV.

In light of the appropriate adverse credibility determinations of the IJ and BIA, and Kiselev's failure to substantiate her claims with corroborative proof, substantial evidence supports the finding that she did not satisfy her burden of establishing eligibility for asylum or withholding of removal. For the foregoing reasons, the petition for review will be denied.

---

[5] In addition, inconsistency was not the only basis upon which the IJ relied. The IJ was also not unreasonable in finding Kiselev's lack of corroboration, given that her husband was in court and available to support her testimony, sufficient to further weaken her claim. See In re Y-B-, 21 I. & N. Dec. 1136, 1139 (BIA 1998) ("[T]he weaker an alien's testimony, the greater the need for corroborative evidence").