PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JORGE ANTONIO RAMOS CERVANTES;
PAOLA ANDREA RAMOS CERVANTES;
DANIEL ALEJANDRO RAMOS
CERVANTES,

                          *Petitioners,*

                  v.                                 No. 09-1519

ERIC H. HOLDER, JR., Attorney
General,

                          *Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: January 28, 2010

Decided: March 8, 2010

Before TRAXLER, Chief Judge, and KING and
GREGORY, Circuit Judges.

Petition for review denied by published opinion. Judge King
wrote the opinion, in which Judge Gregory joined. Chief
Judge Traxler wrote a separate concurring opinion.

## COUNSEL

**ARGUED**: Sheryl Winarick, LAW OFFICE OF SHERYL
WINARICK, Washington, D.C., for Petitioners. Benjamin J.

Zeitlin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Richard M. Evans, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

## OPINION

KING, Circuit Judge:

Petitioners Jorge Ramos Cervantes, Paola Ramos Cervantes, and Daniel Ramos Cervantes, who are siblings, seek appellate review of a final order of the Board of Immigration Appeals (the "BIA"), which rejected their attempt to forestall removal from the United States by obtaining temporary protected status ("TPS") from the immigration authorities, pursuant to 8 U.S.C. § 1254a. On appeal, Petitioners, who were minor children, contend that the BIA erred in affirming the ruling of an Immigration Judge (the "IJ") that they were ineligible for TPS because they could not satisfy the eligibility requirements of 8 U.S.C. § 1254a(c)(1)(A). As explained below, we reject their contentions and deny review.

I.

The underlying facts are undisputed. The Petitioners' parents entered the United States from Honduras sometime before December 30, 1998, while the Petitioners remained with their grandparents in Honduras. On January 5, 1999 — while the Petitioners were yet in Honduras — the Attorney General designated that country for the TPS program due to the devastation caused by Hurricane Mitch.[1] TPS is autho-

---

[1] We use "TPS" to refer to the immigration status sought by the Petitioners. On the other hand, we use "TPS program" to refer to the overall administration of TPS by the federal authorities.

rized by Section 244 of the Immigration and Nationality Act (the "INA"), which allows eligible nationals of a foreign state to temporarily remain in the United States during the pendency of that state's designation for the TPS program. *See* 8 U.S.C. § 1254a. After Honduras was so designated in 1999, the Petitioners' parents successfully applied for TPS. To obtain TPS, the parents were obliged to establish, inter alia, that they: (1) had been "continuously physically present in the United States" since December 30, 1998 (the "continuous physical presence" requirement); and (2) had "continuously resided in the United States" since January 5, 1999 (the "continuous residence" requirement). *See* 64 Fed. Reg. 524, 525 (Jan. 5, 1999).[2]

After the Petitioners' grandparents became ill, the Petitioners left Honduras to join their parents in this country, entering the United States illegally on September 9, 2004. The Department of Homeland Security (the "DHS") immediately initiated removal proceedings against the Petitioners, ordering them to appear before an immigration judge to show why they should not be removed. As a defense against such removal, the Petitioners filed applications with the IJ for what is known as "late initial registration" for TPS.[3] A "late initial registration" allows the child of a person who was eligible for TPS during the initial registration period to apply for TPS during

---

[2]Under the statutory provisions applicable in 1999, the Attorney General was empowered to designate a foreign state for the TPS program. Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, the responsibility for administering the TPS program was transferred to the Department of Homeland Security. For ease of reference and consistent with his status as Respondent in this appeal, we refer to the TPS program's administering authority as the Attorney General.

[3]In addition to filing their TPS applications with the IJ, the Petitioners filed TPS applications with DHS on April 25, 2005. In August 2006, DHS denied those applications because the Petitioners could not demonstrate (1) their continuous residence in the United States since December 30, 1998, and (2) their physical presence in the United States since January 5, 1999. The Petitioners did not appeal from the DHS denials.

a subsequent extension thereof. *See* 8 C.F.R. § 1244.2(f)(2)(iv). The Petitioners were thus entitled to seek late initial registration, as their parents were eligible for TPS during the initial registration period for Honduran nationals (January 5, 1999 to August 20, 1999).

On November 16, 2007, the IJ issued an oral decision denying the Petitioners' TPS applications and ordering them to voluntarily depart the United States.[4] The IJ concluded that, unlike their parents, Petitioners could not satisfy the "continuous physical presence" and "continuous residence" requirements because they did not enter the United States until September 2004. In so ruling, the IJ rejected Petitioners' effort to "have [TPS] imputed to them." J.A. 35 (ruling that "imputed" TPS status "is not a part of case law, it is not a part of regulation; indeed, it is not a part of the statute").

The Petitioners thereafter appealed the IJ's adverse ruling to the BIA, which, on April 6, 2009, dismissed their appeal by way of a single-member, nonprecedential decision. *See* J.A. 3-5. In that ruling, the BIA concluded that the IJ had "appropriately applied the laws and regulations as written." *Id.* at 4. In pertinent part, the BIA adopted the IJ's conclusion that "Section 244 of the [INA] does not provide for 'derivative' [or imputed] TPS," and concluded that the Petitioners could not satisfy the INA's "continuous physical presence" and "continuous residence" requirements. *Id.* at 3. In short, the BIA determined that the "regulations do not provide for waiver of the TPS residence requirements for children of current TPS registrants." *Id.* at 4. Finally, the BIA, like the IJ, rejected the Petitioners' various policy-based arguments, explaining that it had "no authority to consider challenges to the regulations and the [INA]." *Id.* On May 6, 2009, the Petitioners petitioned for review in this Court, and we possess jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

---

[4]The IJ's oral decision is found at J.A. 33-37. (Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

## II.

Where the BIA has adopted and supplemented an IJ's decision, as here, we review both rulings and accord them appropriate deference. *See Niang v. Gonzales*, 492 F.3d 505, 511 n.8 (4th Cir. 2007). When the issue on appeal "turns on an interpretation of the INA — a statute that the BIA administers — we afford the BIA deference under the familiar *Chevron* standard." *Midi v. Holder*, 566 F.3d 132, 136 (4th Cir. 2009) (citing *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984)); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[T]he BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication . . . ." (internal quotation marks omitted)).

We have recognized, however, that the various courts of appeals have failed to agree on the standard of review accorded nonprecedential single-member BIA decisions. *See Lin v. Mukasey*, 517 F.3d 685, 694-95 (4th Cir. 2008) (observing that some "circuits have held that nonprecedential decisions by a single member of the BIA should not be accorded deference under *Chevron*"). At least two circuits have ruled that, although such single-member decisions are not entitled to *Chevron* deference, they are nevertheless entitled to some "measure of respect" under the less deferential standard of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Carpio v. Holder*, __ F.3d __, No. 08-9536, slip op. at 10 (10th Cir. Jan. 12, 2010); *Barrios v. Holder*, 581 F.3d 849, 859 (9th Cir. 2009). Under *Skidmore* deference, we assess the "thoroughness evident in [the BIA's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.[5]

---

[5]We need not resolve in this proceeding whether nonprecedential BIA decisions are entitled to *Chevron* deference, or merely to *Skidmore* defer-

### III.

In their petition for review, the Petitioners maintain that the IJ and BIA both erred in concluding that they could not satisfy the "continuous physical presence" and "continuous residence" requirements for TPS. Those requirements are specifically established by the INA, which provides that an alien who is a national of a foreign state designated for the TPS program "meets the requirements" for TPS if, inter alia:

> (i) the alien has been *continuously physically present* in the United States since the effective date of the most recent designation of that state;

> (ii) the alien has *continuously resided* in the United States since such date as the Attorney General may designate . . . .

8 U.S.C. § 1254a(c)(1)(A) (emphasis added). Additionally, the Attorney General has adopted implementing regulations for the TPS program, which provide, in pertinent part, that an alien "may . . . be granted" TPS if he or she

> (b) Has been *continuously physically present* in the United States since the effective date of the most recent designation of that foreign state;

> (c) Has *continuously resided* in the United States since such date as the Attorney General may designate;

* * *

---

ence. As explained below, we would deny the petition for review under the less deferential standard of *Skidmore*. *See, e.g.*, *Mushtaq v. Holder*, 583 F.3d 875, 877 (5th Cir. 2009) (declining to decide whether *Chevron* deference applied because petitioner's claim failed application of *Skidmore* deference).

(f)(1) Registers for [TPS] during the initial registra-
tion period announced by public notice in the Fed-
eral Register, or

(2) During any subsequent extension of such des-
ignation if at the time of the initial registration
period:

* * *

(iv) The applicant is a spouse or child of an
alien currently eligible to be a TPS regis-
trant.

8 C.F.R. § 1244.2 (emphasis added).[6]

On January 5, 1999, the Attorney General first designated
Honduras for the TPS program, publishing a notice to that
effect in the Federal Register. *See* 64 Fed. Reg. 524 (Jan. 5,
1999). More specifically, the Attorney General's notice pro-
vided that Honduran aliens would be eligible to apply for TPS
if they, inter alia: (1) had been "continuously physically pres-
ent" in the United States since January 5, 1999; and (2) had
"continuously resided" in the United States since December
30, 1998. *Id.* at 525. We address the Petitioners' contentions
with respect to these requirements in turn.

A.

The INA's "continuous physical presence" requirement,
which is codified at 8 U.S.C. § 1254a(c)(1)(A)(i), requires an
alien's continuous physical presence in the United States

---

[6]Parts 244 and 1244 of Title 8 of the Code of Federal Regulations are
identical, except that Part 244 applies to the DHS, whereas Part 1244 gov-
erns the Department of Justice and its Executive Office of Immigration
Review, which includes the immigration courts and the BIA. As this
appeal involves a petition for review of a final order of the BIA, we are
obliged to apply the provisions of Part 1244.

since the effective date of the "most recent designation" of the relevant foreign state for the TPS program. In seeking relief here, the Petitioners maintain that the phrase "most recent designation" is ambiguous. Under their reading of § 1254a(c)(1)(A)(i), the phrase "most recent designation" means the Attorney General's "most recent determination and announcement that the conditions for TPS continue to be met." Pets.' Br. 7. The Attorney General, on the other hand, has consistently maintained that the phrase "most recent designation" refers to the initial designation of a foreign state for the TPS program, and not to any subsequent extension thereof.

After the initial designation of Honduras for the TPS program on January 5, 1999, the Attorney General posted at least eight additional notices in the Federal Register stating that the conditions for TPS continued to exist and extending the original TPS program designation for Honduras. *See, e.g.*, 73 Fed. Reg. 57,133, 57,134 (Oct. 1, 2008) (extending designation for Honduras for eighth time, through July 5, 2010). In the Petitioners' view, each extension of the TPS program for a particular foreign state represents the "most recent designation." Accordingly, Petitioners contend that their relevant date for the "continuous physical presence" requirement — i.e., the effective date of the "most recent designation" of Honduras for the TPS program — is the date of the most recent extension of the TPS program designation for Honduras, that is, October 1, 2008. Thus, Petitioners maintain that they satisfy the "continuous physical presence" requirement because they have been present in the United States since September 2004.

The Petitioners argue that, given this asserted ambiguity, we are obliged to determine "whether the agency's interpretation of [§ 1254a(c)(1)(A)(i)] is based on a reasonable construction of the statute or if the agency's interpretation serves to frustrate the intent of Congress." Pets.' Br. 12. In support of their position, Petitioners rely on the legislative history of the TPS program, contending that "Congress' key priority and

underlying intent was to protect the nuclear family unit and to promote family unity." *Id.* at 15. Accordingly, the Petitioners maintain that this Court should "interpret ['most recent designation'] to mean the most recent determination and announcement by the [Attorney General] that the conditions for a TPS designation continue to be met." *Id.* at 16.

Assuming that *Skidmore* deference (as opposed to *Chevron* deference) is appropriate here, we nonetheless defer to the BIA's construction of the "continuous physical presence" requirement — including the statutory phrase "most recent designation" — if that construction has the "power to persuade." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Notably, the BIA has construed the phrase "most recent designation" to mean only the initial designation of a foreign state for the TPS program, and the Attorney General has consistently adhered to that reading. Indeed, each of the eight TPS program extension notices with respect to Honduras in the Federal Register has stated that aliens may be eligible, if they satisfy the statutory eligibility requirements, for "late initial" TPS registration. Thus, those extension notices have expressly required late initial registrants to independently demonstrate their continuous residence in the United States since December 30, 1998, and their continuous physical presence here since January 5, 1999. *See, e.g.*, 73 Fed. Reg. 57,133, 57,136 (Oct. 1, 2008).

Moreover, since 1998, when the regulations providing for late initial TPS registration were first adopted, the Attorney General has consistently applied this interpretation of the TPS program's eligibility requirements. In a 1998 Federal Register notice outlining the late initial registration process, the Immigration and Naturalization Service (the "INS") explained that it was adopting a suggestion that would allow children of TPS registrants to apply for TPS despite not having done so during the initial registration period. The INS explained, however, that such late initial registrants were obliged to independently satisfy the statutory requirements for TPS:

> The Service does not agree with the request [advanced in a public comment] that those who do not meet the basic eligibility requirements, including physical presence in the United States by the date specified in the TPS Federal Register notice, should be eligible for initial late registration.

63 Fed. Reg. 63,593, 63,594 (Nov. 16, 1998). Indeed, the INS was emphatic that those applying for late initial TPS registration (such as the Petitioners),

> must meet all other requirements of TPS including presence in the United States at the time the foreign state in question was designated for TPS. This rule is *not intended to extend protection to persons who arrived in the United States*, whether legally or illegally, *after the designation was made . . . .*

*Id.* (emphasis added).

In this context, we must view the Attorney General's consistent interpretation of the "continuous physical presence" requirement as persuasive.[7] Thus, the statutory phrase "most recent designation" merely distinguishes the current designation of a foreign state for the TPS program from any prior TPS program designations of that same foreign state. For example, if a new tragedy were to befall Honduras, leading to a new TPS program designation in 2010, the phrase "most

---

[7]We are also impressed by the fact that the statutory process through which the Attorney General designates a foreign state for the TPS program supports the BIA's interpretation. The INA provides that the Attorney General's TPS program designation takes "effect upon the date of publication of the designation." 8 U.S.C. § 1254a(b)(2). Such a designation is subject to periodic review, and if the Attorney General continues to believe that the conditions for TPS are satisfied, "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the Attorney General, a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

recent designation" would simply indicate that "continuous physical presence" was required since the effective date of the 2010 designation — i.e., the most recent designation of Honduras for the TPS program — as opposed to the effective date of the 1999 designation.

Importantly, the Petitioners have been unable to offer any convincing support for otherwise interpreting the phrase "most recent designation."[8] Because their proposed interpretation of that phrase is belied by the relevant statutory language and is contrary to the Attorney General's consistent interpretation thereof, we reject the suggestion that we adopt a different interpretation than that adopted by the BIA. Simply put, applying *Skidmore* deference, the BIA's construction of the INA is persuasive. As such, even *Skidmore* deference compels us to conclude that the BIA did not err in determining that the Petitioners are unable to satisfy the "continuous physical presence" requirement for TPS.

## B.

Even if the Petitioners could satisfy the "continuous physical presence" requirement for TPS, they would also be obliged to satisfy the "continuous residence" requirement, which is codified at 8 U.S.C. § 1254a(c)(1)(A)(ii). Under the "continuous residence" requirement, a TPS applicant must have continuously resided in this country since a date designated by the Attorney General, which was, in this instance, December 30, 1998.

---

[8]In support of their position on the "continuous physical presence" requirement, the Petitioners emphasize the legislative history of the TPS program, contending that the "primary and fundamental intent" of Congress was to "promote family unity, family reunification, and protection of the nuclear family." Pets.' Br. 13. This legislative history, however, sheds no light on the meaning of the phrase "most recent designation," but merely focuses on the program's broad goals.

The Petitioners maintain that, although they did not actually reside in the United States until September 2004, the BIA should have "imputed" their parents' United States residence to them, because they were minor children of parents who continuously resided here since December 30, 1998. The Attorney General, by contrast, contends that the INA and the applicable regulations unambiguously mandate that each TPS applicant independently satisfy the "continuous residence" requirement, such that the residence of the Petitioners' parents cannot be imputed to them.

In support of their "imputation" or "derivative residence" theory, the Petitioners rely on decisions from other circuits, as well as their argument that the intention of Congress in authorizing the TPS program was to protect "family unity." First, Petitioners rely on decisions that have imputed the domicile of parents to their minor children. *See, e.g.*, *Lepe-Guitron v. I.N.S.*, 16 F.3d 1021, 1025 (9th Cir. 1994) ("[W]e are impelled to the conclusion — unremarkable at common law — that a child's domicile follows that of his or her parents."). Unfortunately for Petitioners, the term "domicile" has a far different meaning than "residence." Indeed, the imputation of parents' domicile to their minor children flows from the notion that such "children are, legally speaking, incapable of forming the necessary intent" to establish domicile. *Lepe-Guitron*, 16 F.3d at 1025. Because the INA's "continuous residence" requirement concerns "residence" only (rather than "domicile"), any authority regarding the imputation of a "domicile" is unavailing to the Petitioners. *See Augustin v. Attorney Gen. of the U.S.*, 520 F.3d 264, 271 (3d Cir. 2008) (distinguishing between statutory terms "domicile" and "residence").

As further support for imputing their parental residence to their TPS applications, the Petitioners rely on the Ninth Circuit's decision in *Cuevas-Gaspar v. Gonzales*, which extended the concept of imputing a parental domicile to a "residence," as that term is used in another INA provision. *See*

430 F.3d 1013, 1021 (9th Cir. 2005). We agree with two of our sister circuits, however, that have specifically rejected the reasoning of *Cuevas-Gaspar*. *See Deus v. Holder*, 591 F.3d 807, 811 (5th Cir. 2009) (affirming BIA's refusal to impute parent's "residence" to petitioner); *Augustin*, 520 F.3d at 271 (same). In short, there is a crucial distinction between a "domicile" and a "residence." Put simply, children cannot legally form their own domiciles, but can have their own residences, separate and apart from that of their parents. *See Augustin*, 520 F.3d at 271. Moreover, the *Cuevas-Gaspar* decision is factually distinguishable. There, Cuevas-Gaspar had entered the United States with his mother, who obtained permanent resident status while he was yet a child. *See* 430 F.3d at 1016. After removal proceedings were initiated against him, Cuevas-Gaspar sought to have imputed to him his mother's permanent resident status, in order to satisfy the seven-year continuous residence requirement of the cancellation of removal statute. *See* 8 U.S.C. § 1229b(a). Thus, Cuevas-Gaspar had personally resided in the United States during the period for which he sought imputation. Here, the Petitioners did not personally reside with their parents in the United States during the pertinent period. Instead, Petitioners continued to live "in Honduras with their grandparents and attended school." Pets.' Br. 2. Thus, unlike *Cuevas-Gaspar*, the Petitioners resided in Honduras — not in the United States — during the time frame in question.

As with the "continuous physical presence" requirement, the Attorney General has consistently interpreted the phrase "continuous residence" as independently applicable to minor children. Thus, although late initial registration allows children to apply for TPS if their parents were eligible during the initial registration period, a late registration is "not intended to extend to persons *who arrived in the United States . . . after the [TPS program] designation was made*." *See* 63 Fed. Reg. 63,593, 63,594 (Nov. 16, 1998) (emphasis added). And the Petitioners arrived here in September 2004, over five years

after the Attorney General designated Honduras for the TPS program.

Because the INA does not specify that parents' residences may be imputed to their minor children, the BIA's consistent position — that each TPS registrant must independently satisfy the "continuous residence" requirement — is entitled to at least *Skidmore* deference.[9] Thus, the BIA did not err in determining that the Petitioners are unable to satisfy the TPS eligibility requirements because they have not continuously resided in the United States since December 30, 1998.

IV.

Pursuant to the foregoing, we deny the petition for review.

*PETITION FOR REVIEW DENIED*

TRAXLER, Chief Judge, concurring:

I concur fully in parts I, II, III.A, and IV of Judge King's well-written opinion, and I concur in part III.B as to the result. I write separately only to note that in section III.B., where my colleagues defer to the agency's interpretation of the "continuously resided" requirement set forth in 8 U.S.C. § 1254a(c)(1)(A)(ii), I would reach the same result simply by concluding that Congress spoke unambiguously as to this particular requirement for temporary protected status. *See General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("[D]eference to [the agency's] statutory interpretation

---

[9]In support of their imputation theory, the Petitioners also rely on the canon of statutory construction providing that any ambiguities with respect to the INA should be resolved in favor of the alien. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). This canon is unavailing here, however, as it is a tool of last resort, applicable only when "none of the other canons of statutory construction is capable of resolving the statute's meaning and the BIA has not offered a reasonable interpretation of the statute." *Ruiz-Almanzar v. Ridge*, 485 F.3d 193, 198 (2d Cir. 2007).

is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). "[A] statute's silence on a given issue does not confer gap-filling power on an agency unless the question is in fact a gap—an ambiguity tied up with the provisions of the statute." *Lin-Zheng v. Attorney Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) (en banc) (internal quotation marks omitted). Because I find no ambiguity to be explained or gap to be filled in § 1254a(c)(1)(A)(ii), I would not resort to the Board's interpretation. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").