**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2649
_____

ARTHUR WAYNE WHITE,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A71 769 035)
Immigration Judge:  Honorable Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 7, 2011
Before:  RENDELL, CHAGARES AND ALDISERT, Circuit Judges

(Opinion filed: October 11, 2011)
_____

OPINION
_____

PER CURIAM

        Arthur Wayne White, a citizen of Jamaica, was admitted to the United States in

1992 as a nonimmigrant, and later adjusted his status to lawful permanent resident.  In

December 2009, White pleaded guilty in the Dauphin County Court of Common Pleas to

delivery of a controlled substance (crack cocaine), in violation of 35 Pa.. Stat. Ann. § 780-113(a)(30). The next year, the Government served White with a Notice to Appear, charging him with removability for having been convicted of an aggravated felony as defined in Immigration and Nationality Act ("INA") § 101(a)(43)(B) [8 U.S.C. § 1101(a)(43)(B)] (illicit trafficking in controlled substance), see INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)], and for having been convicted of a controlled substance offense, see INA § 237(a)(2)(B)(i) [8 U.S.C. § 1227(a)(2)(B)(i)]. White, who identified himself as bisexual, applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") based on his sexual orientation.

In February 2011, White appeared before an Immigration Judge ("IJ"). White explained that he was known in Jamaica as being homosexual because he had been molested as a child by a male cousin, George Passley. He also stated that he had been assaulted by neighbors and classmates because of his sexual orientation. After one such fight, White went to the police station, where an officer told him that homosexuals can be killed in Jamaica. White's sister testified that Jamaica is a homophobic society and confirmed that White frequently got into fights growing up because he was accused of being gay. She also stated that Passley's father was killed in a fire which was set by arsonists who were motivated by Passely's perceived homosexuality. White also presented the State Department Country Reports for Jamaica, which included a section pertaining to "Societal Abuses, Discrimination, and Acts of Violence Based on Sexual Orientation and Gender Identity."

2

The IJ sustained the aggravated felony charge and concluded that White's conviction rendered him ineligible for any relief other than deferral of removal under the CAT. With respect to CAT eligibility, the IJ found that White's evidence was insufficient to meet his burden of showing that he would more likely than not be tortured in Jamaica. In particular, the IJ determined that White was credible, that "it is [not] a stretch . . . to characterize Jamaican society as homophobic," but that "because of the sparsity of the evidence . . . [White] just has not been able to meet his burden of proof." The BIA dismissed White's appeal, agreeing that while "there is evidence of significant problems faced by homosexuals in Jamaica, . . . the evidence does not establish that [White] is more likely than not to be tortured upon return to Jamaica . . . ." The BIA also rejected White's claim that the IJ was biased and concluded that White had waived any claims related to the IJ's conclusion that he was ineligible for asylum and withholding of removal. White filed a timely pro se petition for review of the BIA's decision.

We generally lack jurisdiction to review a final order of removal against a criminal alien, like White, who is removable for having committed an offense covered in INA § 237(a)(2). The Court retains jurisdiction, however, to review "constitutional claims or questions of law" raised in a petition for review.[1] INA § 242(a)(2)(D) [8 U.S.C.

---

[1] Whether White's conviction constitutes an aggravated felony is a question of law. Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007). Importantly, however, White did not raise this issue in his appeal to the BIA. Therefore, as the Government properly notes, we lack jurisdiction to the extent that White now seeks to challenge the basis for

§ 1252(a)(2)(D)]; Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). With respect to CAT claims, the question of the likelihood of torture is a mixed one, comprised of a factual component ("what is likely to happen to the petitioner if removed") and a legal one ("does what is likely to happen amount to the legal definition of torture"). Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010). Thus, we may review White's claim that the BIA erred in its application of the law governing CAT protection to the undisputed facts of record. Toussaint v. Gonzales, 455 F.3d 409, 412 n.3 (3d Cir. 2006). The relevant question is whether White "has identified … evidence to compel the conclusion that it is more likely than not that he will be tortured upon return to [Jamaica]." De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 357 (3d Cir. 2010). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punishing . . . for an act, . . . intimidating or coercing, or for any reason based on discrimination of any kind." 8 C.F.R. § 1208.18(a)(1). Such torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id.

We conclude that the facts concerning what is likely to happen to White, as found by the IJ, do not meet the legal definition of torture. The IJ stated that Jamaican society is homophobic. Indeed, the 2009 State Department Country Report for Jamaica indicated

_____

his removability. INA § 242(d)(1) [8 U.S.C. § 1252(d)(1)]; Wu v. Att'y Gen., 571 F.3d 314, 317 (3d Cir. 2009).

that the law criminalizes homosexual conduct, which is punishable by up to 10 years of imprisonment. In addition, that Report noted the murder of a prominent gay rights advocate, physical assaults on homosexuals, targeted attacks against a gay rights advocacy group and its members, and the failure of the police to investigate such incidents. The IJ also described the testimony provided by White and his sister. White claimed that he had been assaulted by neighbors and classmates because he was perceived to be gay. White's sister confirmed this account, and explained that their uncle's house had been burned because his son, who had molested White, was perceived to be homosexual. Based on this evidence, the IJ found that "there could be random violence against Mr. White." Ultimately, however, the IJ concluded that it was unlikely that White is "going to be detained at some point by someone who is not part of the government, that the government would be aware he is being detained and is going to be subjected to torture, and that the government would undertake no efforts to intervene to prevent such nefarious activity." Given this unreviewable factual determination about what is likely to happen to White, we must conclude that the legal definition of torture has not been satisfied in this case.

Finally, White alleges that the IJ was personally biased against him, as demonstrated by comments made at the beginning of a preliminary hearing. During the hearing, at which White submitted his asylum application, the IJ stated, "I need to submit [the asylum application] to the Department of State, even though it's a worthless endeavor. Totally worthless endeavor." The Board concluded that the IJ's comments

5

"reflect[ed] . . . frustration with some of his required processes, but does not suggest any prejudgement [sic] or bias on the [IJ's] part concerning [White's] claim. We agree. The IJ was apparently referring to the requirement that asylum applications be submitted to the State Department for its optional review and comment. 8 C.F.R. § 208.11(a). The "worthless endeavor" did not pertain to White's application itself, but to the process of submitting the application for review by the State Department. In fact, the IJ thoroughly reviewed White's allegations on their merits. Therefore, we conclude that the IJ's comments did not demonstrate bias.

For the foregoing reasons, we will deny the petition for review.