**IMG-189**                                                            **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1466
_____

JAMIE OREA-HERNANDEZ,
                                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099-941-422)
Immigration Judge:  Honorable Rosalind K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 24, 2011
Before:  FUENTES, VANASKIE AND ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed :  November 1, 2011)
_____

OPINION
_____

PER CURIAM

Orea-Hernandez petitions for review of the Board of Immigration Appeals'

("BIA") order upholding the Immigration Judge's ("IJ") decision concluding that Orea-

Hernandez is not a United States citizen and directing his removal to Mexico.  For the

reasons that follow, we will deny the petition for review.

I

During the course of a workplace raid in 2007, Immigration and Customs Enforcement ("ICE") officers interviewed Orea-Hernandez. In response to the officers' questions, Orea-Hernandez identified his mother as Juliana Hernandez, and stated that she and his father were Mexican nationals. AR 130-31. Orea-Hernandez's aunt, with whom he lived, came down to the workplace and spoke with the ICE officers; she informed the officers that Orea-Hernandez's father was Sotero Orea. Id. Based on the information obtained from the interview, the ICE officers concluded that Orea-Hernandez entered the United States without inspection and was therefore removable. The Department of Homeland Security issued Orea-Hernandez a notice to appear.

In 2009, Orea-Hernandez appeared before the IJ. At the hearing, he testified that he was born in Mexico, and that his maternal grandmother brought him to the United States when he was two years old. AR 124, 134. Orea-Hernandez's grandmother raised him in the United States. Orea-Hernandez explained that, at some point during his childhood, his grandmother taught him his parents' names, and that his father died before he was born. AR 126, 128. After leaving Mexico as a child, he met his mother only twice: when she moved to the United States and settled nearby for a two-year period when he was a child, and again when she returned briefly in 2004. AR 132-33, 138.

The IJ denied relief, reasoning that the Government established that Orea-Hernandez is a citizen of Mexico by introducing his Mexican passport, and that Orea-

2

Hernandez failed to qualify for derivative citizenship under the "foundling statute," 8

U.S.C. § 1401(f), because, inter alia, he failed to show that he was a person of "unknown

parentage." The BIA dismissed his appeal, agreeing with the IJ's "unknown parentage"

analysis. Orea-Hernandez timely petitioned for review of that order.

## II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its

own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400

F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the

extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez,

446 F.3d 508, 515 (3d Cir. 2006).

Orea-Hernandez's petition for review presents two main questions: (1) whether

the Agency correctly allocated the burdens for demonstrating his removability and

entitlement to relief, and (2) whether the BIA erred in concluding that he is not a United

States citizen. As to the first question, it is well-settled that the government bore the

initial burden of proving Orea-Hernandez's removability "by clear, unequivocal and

convincing evidence." Sewak v. INS, 900 F.2d 667, 670 n.7 (3d Cir. 1990) (citing

Woodby v. INS, 385 U.S. 276, 286 (1966)). Once the Government presented evidence

demonstrating that Orea-Hernandez was born outside the United States and had entered

without inspection,[1] "the legislative scheme require[d Orea-Hernandez] to justify his

---

[1] Here, the Government's burden was satisfied by the admission into evidence of Orea-Hernandez's Mexican passport, which indicated that he was born in Mexico,

presence in the United States." Vlisidis v. Holland, 245 F.2d 812, 814 (3d Cir. 1957) (citing 8 U.S.C. § 1361). As the BIA correctly stated, Orea-Hernandez then bore the burden of proving his citizenship by a preponderance of the evidence. See Delmore v. Brownell, 236 F.2d 598, 600 (3d Cir. 1956).

Next, we turn to the question whether the Agency correctly concluded that Orea-Hernandez was not a "person of unknown parentage" within the meaning of the Immigration and Nationality Act ("INA"). Whether the Agency correctly interpreted that provision of the INA is a question of law over which we exercise de novo review, subject to appropriate deference.[2] See De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 348 (3d Cir. 2010). An individual is presumed to be a national and citizen of the United States at birth if he is a "person of unknown parentage found in the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States." 8 U.S.C. § 1401(f). Orea-Hernandez argued that he is a person of unknown parentage because he never knew his father, who died before he was born, and was estranged from his mother. The IJ reasoned, and the BIA agreed, that Orea-Hernandez knew who his parents were and maintained close ties with his mother's

and his testimony admitting that he came into the country without inspection.

[2] We note that what constitutes "appropriate" deference to an unpublished, non-precedential BIA decision issued by a single Board member remains an open question. See De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 350-51 (3d Cir. 2010). Here, as in De Leon-Ochoa, because the issue of appropriate deference is not dispositive, we decline to resolve that question. See id. at 351.

family; his lack of a close relationship with his biological parents did not render him a "person of unknown parentage" within the meaning of the INA.

In assessing the BIA's interpretation of that term, we apply the familiar two-step inquiry under Chevron, USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984):

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 842-43. When interpreting a statute, "we begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2156 (2010) (internal citations and quotation marks omitted). According to the Oxford English Dictionary, something "unknown" is "[n]ot known; strange, unfamiliar." OED Online (2011), available at http://www.oed.com. And "parentage" is "the condition or status of a parent; parenthood," or "[t]he identity of one's parents, now esp. as regards nationality or ethnicity; descent, lineage." Id.; see also Black's Law Dictionary (9th ed. 2009) ("parentage" is the "state or condition of being a parent; kindred in the direct ascending line"). In short, § 1401(f) confers citizenship upon those who, inter alia, do not know who their parents are. The plain language of the statute compels us to reject the argument that § 1401(f) also includes those, like Orea-Hernandez, who know their parents' identities, but do not know their parents well because they have been raised by members

5

of their extended family.  Thus, the BIA correctly concluded that Orea-Hernandez could not sustain his burden of proving his derivative citizenship.

Accordingly, we will deny the petition for review.