**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1656
_____

DARWIN ONASS RITTINHOUSE,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA  A094-355-627)
Immigration Judge:  Honorable Steven Morley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 24, 2014

BEFORE: FUENTES, GREENBERG AND COWEN,  <u>Circuit Judges</u>

(Filed:  November 3, 2014)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

COWEN, Circuit Judge.

Darwin Onass Rittinhouse petitions for review of a decision by the Board of Immigration Appeals ("BIA"), which affirmed the denial by the Immigration Judge ("IJ") of his application for temporary protected status ("TPS"). We will deny his petition for review.

I.

A citizen of Honduras, Rittinhouse entered the United States without inspection in 1997. In 1999, the Attorney General designated Honduras for TPS because of the devastation caused by Hurricane Mitch. See Designation of Honduras under Temporary Protected Status, 64 Fed. Reg. 524, 524-26 (Jan. 5, 1999). The Attorney General established an initial registration period beginning on January 5, 1999 and ending July 5, 1999. Id. at 525. The initial registration period was then extended until August 20, 1999. See Extension of the Registration Period for Hondurans and Nicaraguans Under the Temporary Protected Status Program, 64 Fed. Reg. 42,991, 42,992 (Aug. 6, 1999).

On August 20, 1999, Rittinhouse filed with the Immigration and Naturalization Service ("INS") a Form I-821 application for TPS. The INS denied this initial TPS application because of Rittinhouse's failure to respond to a request for evidence establishing his TPS eligibility. He filed a second TPS application in 2003, but United States Citizenship and Immigration Services ("USCIS") denied this application on the grounds that he failed to establish that he was eligible to file a late TPS application after the end of the initial registration period.

2

Rittinhouse was served with a notice to appear, which charged him as removable for being present in the United States without having been admitted or paroled. He conceded the charge. In 2011, Rittinhouse reapplied for TPS. The USCIS denied his TPS application, concluding, inter alia, that a prior TPS application "does not meet the definitions for a qualifying condition" under the regulation setting forth the late registration requirements for the TPS scheme, 8 C.F.R. § 244.2(f). (AR148.) According to the USCIS, such a request does not constitute "an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal" for purposes of § 244.2(f)(2)(ii). Rittinhouse then sought to renew his TPS application before the IJ.

The IJ found Rittinhouse removable and denied his TPS application. The IJ specifically determined that Rittinhouse's initial TPS application "could not constitute a request for . . . a change of status under 8 C.F.R. 244.2(f)(2)(ii)." (AR30.) The BIA then affirmed the IJ's decision without opinion.

II.

8 C.F.R. § 244.2(f)(2)(ii) provides that an alien may be granted TPS if the alien establishes that, inter alia, he or she registers for TPS "[d]uring any subsequent extension of such designation if at the time of the initial registration period . . . (ii) the applicant has an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal which is pending or subject to further review or appeal."[1]

---

[1] Because the BIA summarily affirmed without opinion, we review the IJ's

Rittenhouse contends that, by submitting his TPS application on August 20, 1999, he thereby filed "an application for change of status," i.e., he sought a "change of status" from "unlawful immigration status" to "temporary protected status." (Petitioner's Brief at 7).

However, we agree with the IJ that a TPS application does not constitute an application for change of status for purposes of § 244.2(f)(2)(ii). As the IJ recognized, the regulation applies to individuals who did not file a TPS application during the initial registration period because they had already filed an application to change their status—and accordingly did not believe they needed to ask for TPS in the first place. See, e.g., In re N-C-M-, 25 I. & N. Dec. 535, 535 (BIA 2011) (observing that "the regulations regarding late registration require an alien to establish that at the time of the initial registration period, he . . . was in a specified immigration status or had a pending application or request for a certain status or relief" and that § 244.2(f)(2) lists "various

decision. See, e.g., Dia v. Ashcroft, 353 F.3d 228, 247-50 (3d Cir. 2003) (en banc). Legal questions are generally reviewed de novo. See, e.g., De Leon-Ochoa v. Attorney General, 622 F.3d 341, 348 (3d Cir. 2010). However, we accord Chevron deference to published BIA decisions interpreting "statutes [the BIA] is charged with administering." Id. at 348 (citation omitted)); see also, e.g., Auer v. Robbins, 519 U.S. 452, 461 (1997) (stating that agency's interpretation of own regulations is controlling unless plainly erroneous or inconsistent with regulation). The government acknowledges that non-precedential agency decisions are not entitled to Chevron deference and that this Court has yet to decide whether such rulings are entitled to some deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See, e.g., Mahn v. Attorney General, --- F.3d ---, 2014 WL 4627976, at *2 (3d Cir. Sept. 17, 2014) ("We join our sister circuits in concluding that unpublished, single-member BIA decisions are not entitled to Chevron deference. At most, these decisions are persuasive authority." (citing Skidmore, 323 U.S. at 140)). Because we agree with the IJ's reading of the statutory and regulatory scheme at issue here, we need not—and do not—decide whether this reading may be entitled to any sort

4

ways in which an alien would be considered to maintain 'valid' immigrant or nonimmigrant status for purposes of late filing for TPS" (citations omitted)); In re Echeverria, 25 I. & N. Dec. 512, 517 (BIA 2011) (stating that Attorney General created exception to cover applicants who were in status or condition that made TPS registration unnecessary or discouraged TPS registration).  Additionally, it appears that Rittinhouse's approach would allow an individual who filed a timely but unsuccessful TPS application to submit a series of applications that effectively seek reconsideration or reopening of the initial denial, despite the general limitations on motions to reopen or reconsider imposed by 8 C.F.R. § 103.5(a)(1)(i) (authorizing officers to exercise their discretion to excuse untimely filing of motion to reopen or reconsider where movant demonstrates that delay was reasonable and beyond the movant's control).

The BIA also properly disposed of Rittinhouse's administrative appeal pursuant to its streamlining regulation.  Given our reading of the "an application for change of status" language in § 244.2(f)(2)(ii), it was appropriate for the BIA member to conclude that "[t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion," 8 C.F.R. § 1003.1(e)(4)(i)(B).

III.

For the foregoing reasons, we will deny Rittinhouse's petition for review.

---

of deference.